## APPEAL OF S. MARSH YOUNG.

Docket No. 1839.     Submitted April 16, 1925.     Decided September 7, 1925.

Failure by taxpayer to claim a deduction for depreciation of patents in his original return does not preclude the claiming of such deduction later.

Value of patents as of March 1, 1913, determined.

*Carroll S. Loeb, Esq.*, for the taxpayer.
*J. Harry Byrne, Esq.*, for the Commissioner.

Before Ivins and Marquette.

.The taxpayer appeals from a determination proposing to assess additional taxes for 1919 in the amount of $256.56, and for the year 1920 of $3,018.48. The taxpayer assigns as error the determination of the Commissioner fixing the value of certain patents as of March 1, 1913, and the action of the Commissioner in disallowing a deduction for the exhaustion of said patents. The appeal was submitted upon mutual concessions of the parties and an agreed statement of facts from which the Board makes the following

### FINDINGS OF FACT.

The taxpayer is an individual residing in New York City. Prior to 1910 he invented and patented a system of signaling adaptable to electric railroads. By an agreement made May 2, 1903, and modified September 30, 1910, in consideration of annual payments to be made to him, the taxpayer granted to the General Railways Signal Co. the exclusive right within the territory covered by the patents and for the term of the longest lived patent of the group to make, use, and sell said signal system and apparatus pertaining thereto.

In 1919 and 1920 the taxpayer received from the signal company certain sums of money under said agreement, which sums he did not include in his income-tax returns for those years, but of which he made disclosure by means of memoranda attached to the returns. The Commissioner determined that these sums of money were income and fixed the deficiency herein. The taxpayer then asserted his right to deduct a reasonable allowance for the exhaustion of the patents. The Commissioner conceded this right and fixed the March 1, 1913, value of the patents at $81,264.66, and allowed a deduction for exhaustion on that amount over the remaining life of the patents. Later the Commissioner notified the taxpayer that as he had not claimed the deduction for exhaustion of the patents in his original return, no allowance therefor would be made. The average annual earnings of the patents for the 7 years preceding 1913 were $12,189.70, and the remaining life of the patents is 13 years.

### DECISION.

` The deficiency should be computed in accordance with the following opinion. The amount of the deficiency to be assessed will be settled on consent or on 10 days' notice, under Rule 50.

### OPINION.

Marquette: The taxpayer originally claimed that the amounts received under the contract as royalties were a return of capital.

This claim he now abandons and admits that it constitutes taxable income.

Two questions are raised for decision, first, whether the taxpayer is entitled to deduct a reasonable allowance for exhaustion of the patents, he not having claimed such deduction in his original return; and, second, the March 1, 1913, value of the patents. The first point has been passed upon by this Board in *Appeal of Union Metal Manufacturing Co., 1 B. T. A. 395,* and upon the authority of that decision the determination of the Commissioner disallowing the deduction for the depreciation of the patents is disapproved.

The remaining point is the value of the patents as of March 1, 1913. The Commissioner fixed the value at $81,264.66, and the tax-payer claims a value of $121,722.08. The factors we have to consider are that the average annual return from the patents prior to the designated date was $12,189.70, and the remaining life of the patents was 13 years. The taxpayer arrives at its valuation by multiplying the average annual earnings by the remaining life in years of the patents and determining the present worth of this amount at 4 per cent. The Commissioner in his brief admits a value of $86,979.98, by the use of Hoskold's formula, providing for interest on present worth and sinking fund at the rate of 8 per cent and 4 per cent, respectively. There can not be much question, when the amount of the return is certain, that the method employed by the taxpayer would show value as nearly as it can be ascertained, but we think an element is overlooked in this formula. The risk involved and the uncertainty of the return must be taken into consideration, and the present worth of the expected return over a period of years does not present the full picture. This element of risk and uncertainty could be taken care of by increasing the percentage in computing present worth, but such action would be more or less arbitrary. We are of opinion that the patents should be valued by providing for a sinking fund and a reasonable return upon the present worth, considering the nature of the property, and, for this purpose, that the patents should be valued by allowing 4 per cent compounded annually as a sinking fund. The rate to be allowed on present worth should be commensurate with the risk. The Commissioner has used 8 per cent for this purpose, and we are of opinion that this percentage is as liberal as we care to be. We find that the estimated future royalties for the 13 years of the remaining life of the patents amount to $158,466.10. We find the value of the patents as of March 1, 1913, to be $86,979.98.

ARUNDELL not participating.