LOUIS WERNER SAW MILL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30064, 42923.   Promulgated May 24, 1932.

*Chase Morsey, Esq.*, for the petitioner.
*John H. Pigg, Esq.*, for the respondent.

OPINION.

MARQUETTE: The first question is whether the Panola Block timber transaction should be treated as an installment sale. The contract made in 1918 provided for a cash payment of $175,000 and for further payments of $55,000 each six months thereafter for a period of nine years.

The total sale price of the tract was $1,215,000, which produced a net profit of $160,390.32. No part of that profit was reported as income by the petitioner in its income-tax returns, but for the years 1918 to 1921, inclusive, respondent asserted deficiencies based in part upon proportionate profits, computed upon an installment sale basis. Petitioner paid the deficiencies without protest or claim for refund, except for the year 1920. In its claim for refund for that year petitioner contended that its proportionate profit from the timber sale, when computed upon the proper basis, amounted to $14,520.93. That amount was determined upon the installment plan.

Section 212 (d) of the Revenue Act of 1926 provides that:

Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this subdivision. As used in this subdivision the term " initial payments " means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

The same act, in section 1208, gives retroactive effect to section 212 (d) and makes it applicable to all the years here involved.

As the initial payment for the timber tract did not exceed one-fourth the purchase price the transaction was one which, under the statute, might be treated as an installment sale. Petitioner had the option of returning the profits from the sale as an entirety, accruing in 1918 with the execution of the contract, or upon the installment basis. Neither plan was used. The simple expedient was adopted of not reporting the sale at all, of making no return of the profits derived. Hence, petitioner says, it has exercised no choice in the matter and it is not within respondent's province to make such choice for a taxpayer. Petitioner further contends that whatever profit resulted from the timber sale accrued in 1918; and is taxable only in that year.

We can not agree with those contentions. The petitioner has acquiesced, without protest, in respondent's basis of taxing the profits in question with respect to the years 1918 to 1921. The statute of limitations now precludes any revision of the tax return of 1918 so as to include therein all the accrued profits from the sale. Without complaint or protest, respondent's installment plan of taxing those profits for the years 1918 to 1921 has been accepted by the petitioner. It has accepted the benefits flowing from such basis of taxation, and can not now repudiate that basis and escape the burden of present taxation under the same method, respecting profits from the same transaction, retaining the benefits enjoyed for earlier years. Cf. *Walker* v. *Alamo Foods Co.*, 16 Fed. (2d) 694. Petitioner's acquiescence in respondent's determination for the years 1918 to 1921, if it did not create an estoppel strictly, at least amounted to an election to adopt the method used, or a ratification of it. In our opinion the attitude taken has foreclosed the petitioner from claiming, at this late day, the right to choose a different method of taxation, especially one which is now ineffective and which would render the income immune from its just tax. *White Oak Coal Co.* v. *United States*, 15 Fed. (2d) 474; *McLean* v. *Clapp*, 141 U. S. 429. The respondent's determination respecting taxable income from the sale of the Panola Block tract will be sustained.

The next point in controversy is whether the advance payment of $50,000 to petitioner in 1922 constitutes taxable income for that year.

The amount in question was one-half the total to be paid " as advance royalties and additional compensation " for executing an oil and gas lease. The first half of the total amount was paid to petitioner in 1921, and was included in taxable income for that year by the respondent in his determination of deficiency. Petitioner paid the amount of the deficiency without protest and no claim for refund was filed. He contends, however, that the amount paid in 1922 as advance royalty did not constitute income because of the contingent provision of its repayment and that it will constitute income only if, as, and when the oil and gas lease royalties exceed $100,000 per year. That contention misinterprets the plain facts of the agreement of May 14, 1921. There is nothing therein requiring petitioner to repay the amounts received as advance royalties. Such amounts became the property of the petitioner immediately upon their receipt. There was no condition precedent to their vesting in the petitioner. The agreement does provide that if in any year the oil and gas royalties exceed $100,000 the amount of such excess, up to $25,000, shall be retained by the lessee as a credit upon the advances paid. That is a subsequent condition which may

never be fulfilled and no credits against the advance royalties may ever be earned. If not, those advances remain with petitioner, undiminished. And even if such credits should be earned and applied, petitioner's royalty income will not be diminished; part of it, to the extent of $25,000 per year for four years, will have been paid in advance.

Petitioner further contends that, as it kept its books upon the accrual basis, if the $50,000 received in 1922 is income at all it must be considered as having accrued in 1921 upon execution of the contract providing for its payment. We can not accept that contention, in view of the circumstances disclosed by the record. It was petitioner's duty to report the income received by virtue of the oil and gas contract in its return for 1921, but this was not done. The respondent correctly determined that the amounts received constituted income and gave petitioner the benefit of taxing one-half in each of two years instead of accruing all as taxable income in 1921. Petitioner accepted that determination with respect to 1921 and paid the deficiency asserted upon that basis. There is no difference in principle between the transaction concerning the oil and gas lease and that concerning the Panola Block timber tract. In each the petitioner has elected to accept the benefits flowing from respondent's determination of a method of taxation. Having so elected, petitioner can not now renounce that method and insist upon another under which taxes can not be collected because the statute of limitations has run. " Men must turn square corners when they deal with the Government." *R. I., Ark. & La. R. R. Co.* v. *United States,* 254 U. S. 141.

Several other questions herein raised are disposed of upon the facts. It appears that the following adjustments should be made in computing the deficiencies here involved: Deductions allowable for depletion of the V. S. & P. Block timber tract amount to $50,703.83 for 1922, $49,924.73 for 1923, and $42,206.94 for 1924. For depletion of gas-producing properties deductions of $8,569.70 for 1922, and $29,881.20 for 1923 should be allowed. For depletion of oil-producing property in Arkansas $8,002.41 is allowable as a deduction for 1922. For depreciation of the Lenwil Saw Mill deductions amounting to $19,429.92 for 1922, $19,441.65 for 1923, and $19,238.42 for each of the years 1924 and 1925, should be allowed. Depreciation of the Little Bear Saw Mill is allowable in the amount of $21,858.08 for 1925. Petitioner's income for 1923 should be increased by $11,227.17 received as oil royalty.

*Decision will be entered under Rule 50.*