# W. R. RAMSEY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 47228.   Promulgated June 7, 1932.

*Charles H. Garnett, Esq.*, for the petitioner.
*Maxwell M. Mahany, Esq.*, for the respondent.

## OPINION.

LANSDON: The respondent has asserted deficiencies in income tax for the years 1925 and 1926 in the respective amounts of $3,041.01 and $51,134.07, but the petitioner's appeal is only from the determination for 1926.

The petitioner is an individual, residing at Oklahoma City in the State of Oklahoma, where he is engaged in the acquisition, development and exploitation of oil and gas leases. Prior to January 6, 1926, he acquired a group of oil leases in the State of California, which he thereafter developed and sold to the Ramsey Petroleum Corporation. The first of such leases was acquired some time in 1920 and in the following year he began drilling and development thereon, subsequently purchasing others which were added to his holdings and which he likewise developed.

The actual drilling of the petitioner's leases was done by a contractor who was paid upon a footage basis. In all cases, however, Ramsey furnished, among other equipment and supplies, all derricks and boilers, fuel and water sufficient to furnish the necessary steam for drilling, a certain amount of well casing and electric current and wiring, and lights and equipment for night work lighting. In addition to such equipment, supplies, etc., the petitioner employed a force of men and teams who divided their time in working in, around and upon the leases being developed and other producing properties which he was operating at the time. The wages paid to these employees were charged in petitioner's books in part against the wells being drilled and in part against operation of his producing properties. Such charges, which included salaries paid to his general manager and bookkeepers at his main office and maintenance of that office, were arbitrarily allocated to the properties affected by an estimate based upon the relative time required for each. For

instance, it was estimated that the supervision of the drilling of new wells consumed two-thirds of the time of the manager and the office force, as against one-third of such time for producing wells; therefore, two-thirds of the cost of all overhead was charged to cost of construction and one-third to production. Included in such overhead charges was a salary item of $1,500 a month paid to petitioner and his brother as managers. The portion of these expenditures which the petitioner charged in his books against development costs on such properties is shown in the following table:

| | 1922 | 1923 | 1924 | 1925 | Total |
|---|---|---|---|---|---|
| Labor and wages | $262.50 | $8,578.38 | $9,214.93 | $7,323.03 | $25,378.84 |
| Repairs and supplies | 160.80 | 2,273.31 | 5,109.61 | 5,010.99 | 12,554.71 |
| Teaming and trucking | 124.40 | 2,633.82 | 7,093.13 | 4,157.84 | 14,009.19 |
| Fuel and water | 204.93 | 941.01 | 1,199.71 | 354.28 | 2,699.93 |
| Drilling | 13,036.87 | 157,300.18 | 331,957.94 | 105,625.89 | 607,920.88 |
| Cementing | 304.31 | 4,119.66 | 8,991.16 | 2,831.25 | 16,246.38 |
| Equipment lost in hole | | 1,160.57 | | | 1,160.57 |
| Management | 281.25 | 6,593.74 | 5,409.09 | 3,302.72 | 15,586.80 |
| General overhead | 472.98 | 4,195.91 | 4,291.35 | 2,671.48 | 11,631.72 |
| Depreciation | 315.40 | 5,633.08 | 150.23 | 2,342.50 | 8,441.21 |
| Taxes | | | 46.22 | | 46.22 |
| Total | 15,163.44 | 193,429.66 | 373,463.37 | 133,619.98 | 715,676.45 |

In his income-tax return for 1922, 1923, 1924 and 1925 the petitioner respectively claimed and was allowed deductions from gross income of the several amounts shown in above columns to have been expended by him for such years, as current business expenses. He claimed and was allowed similar deductions in his income-tax return for 1926 and for his drilling expenditures made in that year, and at all times he has so classified and charged out like expenditures in his books and enjoyed the benefits and advantage of such deductions through diminution of his Federal income taxes for the period affected.

In 1926 the petitioner sold the leases here considered to the Ramsey Petroleum Corporation for a contract price in excess of $1,000,000, a greater part of which was paid to him in that year. In computing his taxable gain on that transaction for Federal income-tax purposes he took as a basis the initial cost of the properties increased by the expenditures hereinbefore mentioned, depreciated the total thereof to the date of sale, and concluded that he had sustained a loss in the deal. In auditing the petitioner's return for such year the respondent eliminated, as lease cost factors, all development expenditures which had been taken as deductions in income-tax returns as operating expenses for prior years, and, after making certain other adjustments, determined the deficiency here in controversy. In the original petition a number of alleged errors were assigned, but all were abandoned at the hearing except that set out in paragraph (5) (f) of the petition, which, as stated in the amended petition, is as follows:

The Commissioner has determined a capital net gain to the petitioner in 1926 of $409,072.55 upon the sale of certain oil and gas wells and the leases covering the land on which the same were situated. The petitioner says that the Commissioner has not taken the true cost of the property sold as the basis for determination of the gain on such sale, but has erroneously omitted to deduct $541,128.78 of the cost of such property from the sale price thereof. The petitioner says that he is entitled to the deduction of this additional amount as cost of the property sold from the sale price thereof in determination of the gain.

The controlling issue for determination is one of law and limited to the direct question of whether or not the petitioner, having treated the disputed expenditures in his books as current expenses in and for the years made, and, having deducted them from income in diminution of his taxes in such years, as permitted by article 225 of Regulations 65, may now reverse his prior methods of accounting and deduct the same amounts from the sale price of his property to reduce his otherwise taxable profit from that transaction.

The applicable provisions of all revenue acts require that net income shall be computed " in accordance with the methods of accounting regularly employed in keeping the books " of the taxpayer, and to facilitate a practical application of their terms require the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, to prescribe clarifying rules and regulations which, when so made, if reasonable, have the full force and effect of law. *Sterling Oil & Gas Co.* v. *Lucas*, 51 Fed. (2d) 413; *Fawcus Machine Co.* v. *United States*, 282 U. S. 375; *United States* v. *Grimaud*, 220 U. S. 506; *Brewster* v. *Gage*, 280 U. S. 327; *Boske* v. *Comingore*, 177 U. S. 459. Pursuant to these laws, and as a guide to taxpayers, the respondent issued the regulations here considered containing the article hereinbefore cited, which provides as follows:

*Charges to capital and to expense in the case of oil and gas wells.*—Such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with the exploration of the property, drilling of wells, building of pipe lines and development of the property may at the option of the taxpayer be deducted as a development expense or charged to capital account returnable through depletion. If in exercising this option the taxpayer charges these incidental expenses to capital account, in so far as such expense is represented by physical property it may be taken into account in determining a reasonable allowance for depreciation. The cost of drilling nonproductive wells may at the option of the operator be deducted from gross income as a development expense or charged to capital account returnable through depletion and depreciation as in the case of nonproductive wells. *An election once made under the provisions of this article will control the taxpayer's returns for all subsequent years.* Where deductions for depreciation or depletion have either on the books of the taxpayer or in his returns of net income been included in the past in expense or other accounts, rather than specifically as depreciation or depletion, or where capital expenditures

have been charged to expense in lieu of depreciation or depletion, a statement indicating the extent to which this practice has been carried should accompany the return. [Italics supplied.]

In years prior to 1926 the petitioner considered it to his interest to treat the expenditures here in controversy as development expenses and, elected, under the article quoted, to deduct them from his gross income for the respective year when made. The respondent contends that, having so elected under the regulation, he is bound to such election as provided for in its terms. In this contention we must sustain the respondent inasmuch as the regulation is reasonable and valid. *Sterling Oil & Gas Co.* v. *Lucas, supra.*

The petitioner is not seeking to correct an error made in ignorance of his rights, but to recall an election deliberately made which enabled him to reduce his taxes for the years affected. Without offering to amend his prior returns and restore to taxable income for such years the amounts which he now says were " erroneously made and allowed," he now claims a second deduction of the same items. The respondent has not attempted, nor is he now attempting, to change arbitrarily the status of the expenditures, but is asking that petitioner be held to the election which he himself made and through which he enjoyed a diminution of his taxes in the prior years. In *Old Farmers Oil Co.*, 12 B. T. A. 203, cited by the petitioner, the expenditures considered were payments made for wells drilled by contract for which payment was made to the driller after completion and which, as pointed out by the Board in its opinion, constituted capital assets with useful lives. The regulation here considered was challenged in that case and, although the opinion of the Board included certain dicta which the petitioner claims is authority for his contentions, it was further pointed out that the issue here involved was not before it in that case, and in relation thereto we said:

Whether the provision of the regulation which permits a taxpayer to elect whether he will deduct or charge to capital account such incidental expenses as are paid for wages, fuel, repairs, hauling, etc., in connection with drilling of wells is a proper exercise by the Commissioner of his authority to make regulations is not before us. Petitioner made no such expenditures. What he did was to contact with third persons for completed wells and pay such persons the stipulated price therefor. By these contracts, petitioner received assets which were just as much capital assets as structures erected above ground. The payment for wells when completed bears no resemblance to payment for wages, fuel, repairs, hauling, etc. Payment for such items may be in the nature of ordinary and necessary expenses, but payments for completed wells are payments for capital assets.

It will thus be seen that the petitioner is in error when he argues that the " precise question " was before the Board in that case.

Although we must find, as hereinabove indicated, in favor of the respondent in this controversy, there are other reasons, equally as

potent, why the petitioner can not prevail which can not be overlooked. The petitioner took advantage of the liberal provisions of article 225, *supra*, and with the approval and consent of the respondent reduced his income-tax payments for each of the years 1922, 1923, 1924 and 1925 by classifying these expenditures currently as business expenses. . Having profited by such prior classification, at the expense of the Government, he now seeks again to profit by them in reduction of his taxes for 1926, without offering to do equity by paying the taxes he escaped in the prior years. Inasmuch as the respondent acquiesced and acted upon the petitioner's classification in such prior years, and as the statute of limitations now prevents collection of such taxes, it is obvious that the petitioner has voluntarily waived his right to change his position, to the detriment and loss of respondent, and is therefore estopped from denying the correctness of his former assumed status. *Swain* v. *Seamans*, 9 Wall. 254; *Shutte* v. *Thompson*, 15 Wall. 151. Parties must take the consequences of the position they assume. *Casey* v. *Galli*, 94 U. S. 673. The procedure for which petitioner now contends would result in a very substantial distortion of his income for the taxable years unless adjustments which are now impossible could be made for the prior years in which the amounts in controversy were deducted from income as ordinary and necessary expenses. This would enable petitioner, through a change in accounting method, to avoid taxation on a substantial amount of admitted income, a result repugnant to the law and the plain intent of Congress. The method of accounting now proposed does not reflect the true income of the petitioner in the circumstances herein and therefore does not comply with section 212 (b) of the Revenue Act of 1926. See *Leslie H. Fawkes*, 25 B. T. A. 366; *Southern Abstract & Loan Co.*, 25 B. T. A. 1095; *Lewis Werner Saw Mill Co.*, 26 B. T. A. 141.

In the deficiency letter which forms the basis of this appeal the respondent advised the petitioner of tax deficiencies for each of the years 1925 and 1926. The petitioner paid the deficiency asserted for 1925 and appealed in respect of the 1926 item. At the hearing the respondent amended his answer and asked us to assume jurisdiction over 1925 and to increase the deficiency asserted for that year, in case we should find in favor of the petitioner in respect to his contention for 1926. We are of opinion, in the absence of any appeal respecting 1925, that we are without jurisdiction over the tax for that year. However, in view of our conclusions on the issue raised in the appellant's petition, that question need not be decided.

*Decision will be entered for the respondent.*