MRS. R. L. WHEELOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. L. WHEELOCK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE RESPONDENT.

Docket Nos. 37805, 37806.   Promulgated July 6, 1933.

*Harry C. Weeks, Esq.*, for the petitioners.

*F. B. Schlosser, Esq.*, and *E. B. Cannon, Esq.*, for the respondent.

OPINION.

LANSDON : Petitioners allege that they are entitled to deduct the amount of $600 from the income of the marital community of which they are members, as a bad debt ascertained to be worthless and charged off in the taxable year. Wheelock testified that as surety on a note which the money lender failed to collect by a suit in 1923 he paid more than $600 in that year. The evidence shows that in the taxable year he paid not less than $600 as surety on the note of one Banks, who was then entirely without assets. In such circumstances the deduction claimed is allowable. *Otto P. Heyn*, 4 B.T.A. 1256.

As to the loss claimed as sustained in 1923, Wheelock testified that he advanced about $1,900 to a blacksmith with which to begin business; that the business was operated for two or three weeks and then turned over to him; and that he sold the material for about $500. The only basis for respondent's disallowance of the loss here claimed is that the exact figures are not proved. We are satisfied that petitioner advanced not less than $1,900 and recovered not more than $500. The determination of the respondent is reversed.

The third question relates to the amount of allowable depletion to which petitioners are entitled in the taxable year as a deduction from income which they realized from sales of oil produced on the Wheelock-Smith lease. In their income tax returns for 1923, petitioners claimed and were allowed depletion in the amount of $122,702.87, based on a discovery capital value of $308,028.28, an oil reserve of 552,037.71 barrels, and a production of 219,905.50 barrels. They now claim that the actual production from such lease in 1923 was 237,766.57 barrels. In amended answers to the petitions the respondent avers that the discovery value was incorrectly computed and that depletion should not be allowed in excess of $83,710.47 and moves for an increased deficiency.

In support of his affirmative allegation the respondent contends that the basis for depletion, which in this case is the fair market value within 30 days of the discovery of oil and gas, was incorrectly computed. In his computation, which was made by the so-called analytical method, respondent used a price of oil of $1.30 per barrel at the date of discovery. The wells here involved were in the Powell field, in which at the discovery date there was flush production in excess of existing pipe line facilities. This resulted temporarily in a local market price that was substantially lower than at other points in the Mid-continent field in Oklahoma and northern Texas. In their Form O report the petitioners stated that the price of oil at date

of discovery of the wells in question in what is known as the Mid-continent field, of which the Powell field is geographically a part, was $1.30 per barrel. Respondent argues that he was misled by that statement and that his computation of value therefor was greatly in excess of the fair market value of the property within 30 days of discovery, which he contends was $184,819.40.

Discovery value is the fair market value of an oil producing property within 30 days after a producing well is developed.[1] The discovery well on the lease in question produced 9,000 barrels of oil daily when it was brought in and a second, drilled in before the expiration of the 30-day period, was an 18,000 barrel gusher. Seven other wells of varying productivity were completed and produced oil in the taxable year. In the period from October 12 to December 31, 1923, there was a gross production from petitioners' interest in the lease in the volume of 237,766.57 barrels. Witness testified that similar adjacent property was sold at about the time of the discovery on the Wheelock-Smith lease at prices considerably in excess of the discovery value of the property in question as determined by the Commissioner, acreage, production and marketability considered. One witness, well qualified by education, training and experience as an expert in such matters, was of the opinion that petitioners' interest in the discovery value of the lease in question was not less than $400,000 and another equally well qualified, testified to a value of from $250,-000 to $425,000. The property was sold in March 1924 for $500,000, of which petitioner received $250,000 in addition to approximately $300,0000 which he had realized from the sale of oil prior thereto. In our opinion the fair market value of the petitioners' interest in the Wheelock-Smith lease was at least $308,028.28, the amount originally determined by the respondent. On this issue the contention of the respondent for a lower value is overruled. At the hearing the respondent admitted that the actual production from the petitioners' interest in the Wheelock-Smith lease in 1923 was 237,766.56 instead of 219,905.50 barrels of oil. This admission must be considered in a recomputation of the deficiency under Rule 50.

The parties have stipulated that depreciable equipment which cost $167,244.22 was purchased for and installed on the Wheelock-Smith

---

[1] [Sec. 234 (a) (9), Act of 1921.] That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

(9) &ast; &ast; &ast; *Provided further,* That in the case of mines, oil and gas wells, discovered by the taxpayer, on or after March 1, 1913, and not acquired as the result of purchase of a proven tract or lease, where the fair market value of the property is materially disproportionate to the cost, the depletion allowance shall be based upon the fair market value of the property at the date of the discovery, or within thirty days thereafter: &ast; &ast; &ast; such reasonable allowance in all the above cases to be made under rules and regulations to be prescribed by the Commissioner with the approval of the Secretary. &ast; &ast; &ast;

lease and used in the production of oil therefrom in 1923. One half the cost of such equipment or $83,622.11 was charged to the petitioners, but no deduction on account of depreciation thereof was claimed on their income tax returns for 1923 or allowed to them on any subsequent audit of such returns. Petitioners sold their interest in the lease about March 18, 1924 for $250,000. In their computation of gain from such sale the basic cost was not decreased by any amount representing depreciation allowed or allowable before the date of the sale. The tax liability of the petitioners for 1924 was finally settled by an agreement executed under the terms of section 606 of the Revenue Act of 1928.

Petitioners now claim deduction from their income in 1923 of an amount representing depreciation on physical property used by them in that year in their business of producing oil. Failure to claim depreciation on a return does not preclude assertion of claim therefor in proceedings before the Board. In *Union Metal Mfg. Co.*, 1 B.T.A. 395, we said:

The mere failure of a taxpayer to take the proper deduction in each year does not permit him to take advantage of his mistake through an incorrect return in a later year, nor does it permit the Commissioner to compel an incorrect return. The law does not contemplate the adjustment in any part of an incorrectly computed tax by the incorrect computation of another tax. Unless barred by the statute of limitations, a taxpayer is not precluded from demanding a correct computation of his tax for a past year on the facts as they exist, whether originally reported or not.

The rule therein established in that proceeding has been followed by the Board in many subsequent cases by the courts and by the Commissioner. *S. Marsh Young*, 2 B.T.A. 457; *Mereen-Johnson Machine Co.*, 5 B.T.A. 400; *Burke Electric Co.*, 5 B.T.A. 553; *Gould Coupler Co.*, 5 B.T.A. 499; *Deltox Grass Rug Co.*, 7 B.T.A. 811. In *Felt & Tarrant Mfg. Co.* v. *United States*, 37 Fed. (2d) 977, the Court of Claims followed the same rule on the question. The *Felt & Tarrant Mfg. Co.* case was taken to the Supreme Court on certiorari and that tribunal, in an opinion reversing the court below, recognized at least by implication that the rule of the *Union Metal Mfg. Co.*, supra, 283 U.S. 260, is sound.

The respondent does not deny that the general rule is as above set forth, but he contends that the practically contemporaneous settlement of the tax liability of the petitioners for 1924, under the provisions of section 606 of the Revenue Act of 1928, which had the effect of dropping the bar of the statute of limitations against all questions relating to income for that year, effected estoppel as to the claim for depreciation in 1923. It is true, of course, that peti-

tioners' failure to claim depreciation in 1923 increased their taxable income in that year. It is equally true that their failure to reduce the basis for computing gain on the sale of the property in 1924 reduced their taxable income in that year in the same amount. By reason of the closing agreement as to tax liability for 1924 the Government is not now able to redetermine petitioners' taxable income for that year. It follows, therefore, that if the present contention is allowed the petitioners will have been allowed to reduce their taxable income in each of two successive years by the deduction of the same item.

Petitioners do not come here offering to correct their return for 1924 on the basis of the true income for that year and, even if they were willing so to do, such action is now barred by the statute of limitations as well as the closing agreement. It is apparent, therefore, that in the present proceeding they are not asking us to redetermine their true tax liability for each of the years 1923 and 1924, but for the second time to allow them an offset against their taxes which they have already enjoyed. Unless the law inescapably permits such an inequitable result, they should not prevail.

In many recent cases the sort of estoppel here argued by the respondent has been applied by this Board and the courts. It may be outside the general rule, but it is based on acquiescence or acceptance of benefits. In *Ralston Purina Co.* v. *United States*, 58 Fed. (2d) 1065, the Court of Claims said: "Under the doctrine of equitable estoppel, a person is held to a representation made on a proposition assumed where otherwise inequitable consequences would result to another, who having the right to do so under all the circumstances of the case, has in good faith relied thereon."

In *Inland Products Co.* v. *Blair*, 31 Fed. (2d) 867, in affirming a decision of this Board, the Circuit Court of Appeals for the Fourth Circuit said:

It is true that these moneys, having been paid voluntarily by the taxpayer under mistake of law, could not have been recovered back (*Fox* v. *Edwards* (C.C.A. 2d) 287 F. 669) ; but nevertheless there was a moral obligation upon the government upon discovering the mistake to correct it, and it has made the correction and the taxpayer has accepted the refund. It is elementary that one who seeks to have a mistake corrected must surrender what he has received by reason thereof, and likewise one who accepts the correction of a mistake is estopped to claim benefit to which he would be entitled if it were not corrected. In this case, the taxpayer, as the result of the payment under mistake, received the deduction from its gross income of the amount so paid. When the mistake was rectified, and it accepted the return of the amount paid, with interest, it ought not to be heard to claim the benefit of the deduction on account of the payment.

In *Louis Werner Saw Mill Co.*, 26 B.T.A. 141, the Board said:

\* \* \* The respondent correctly determined that the amounts received constituted income and gave petitioner the benefit of taxing one-half in each of two years instead of accruing all as taxable income in 1921. Petitioner accepted that determination with respect to 1921 and paid the deficiency asserted upon that basis. There is no difference in principle between the transaction concerning the oil and gas lease and that concerning the Panola Block timber tract. In each the petitioner has elected to accept the benefits flowing from respondent's determination of a method of taxation. Having so elected, petitioner cannot now renounce that method and insist upon another under which taxes cannot be collected because the statute of limitations has run.

In *W. R. Ramsey*, 26 B.T.A. 277, we said:

\* \* \* The petitioner took advantage of the liberal provisions of article 225, *supra*, and with the approval and consent of the respondent reduced his income-tax payments for each of the years 1922, 1923, 1924 and 1925 by classifying these expenditures currently as business expenses. Having profited by such prior classification, at the expense of the Government, he now seeks again to profit by them in reduction of his taxes for 1926, without offering to do equity by paying the taxes he escaped in the prior years. Inasmuch as the respondent acquiesced and acted upon the petitioner's classification in such prior years, and as the statute of limitations now prevents collection of such taxes, it is obvious that the petitioner has voluntarily waived his right to change his position, to the detriment and loss of respondent, and is therefore estopped from denying the correctness of his former assumed statute. *Swain v. Seamans*, 9 Wall. 254; *Shutte v. Thompson*, 15 Wall. 151. Parties must take the consequences of the position they assume. *Casey v. Galli*, 94 U.S. 673. \* \* \*

In the light of the decisions cited above we are of the opinion that the petitioners should not prevail here. They are not seeking to recover something of which they have been wrongfully deprived. Their loss in 1923, if any, resulted from their own acts and was fully compensated to them in the following year when the amount of deduction now claimed was applied to reduce their tax liability for that year. On this issue the determination of the respondent is affirmed.

On December 31, 1923, the E. L. Smith Oil Co. charged the running account of the petitioners upon its books for one half the cost of development of the lease or $50,492.27. Upon its own books the E. L. Smith Oil Co. capitalized the entire amount of development costs and on December 31 charged out of capital one half thereof to the petitioners, who deducted the same from their income for the taxable year as expense, in conformity with Regulations 62, article 223. As filed, the petitions herein alleged that such amount should have been capitalized by the petitioners and depreciation claimed. This contention has been abandoned. At the hearing the respondent duly amended his answer and alleged that such amount was erroneously allowed as an expense, that it should be capitalized

and that the income of each petitioner for the taxable year should be ratably increased to that extent. It is obvious, of course, that the petitioners' abandonment of an alleged error does not preclude the respondent from making an affirmative allegation of his own in reference to the same matter. It is necessary, therefore, to consider the merits of the allegation as set up in the respondent's amended answer.

No facts on the issue above set out are in controversy. The petitioners claimed and were allowed the amount of the development costs as an expense incurred and paid in the taxable year. Respondent argues that, as the whole amount of development costs was capitalized on the books of the Smith Co., it follows that one half of such amount was thereby capitalized for the petitioner, since in the circumstances such books were also the books of the petitioner. We are unable to agree with this reasoning. It is true that the capital account of the Smith Co. was increased by the full amount of the development costs, but immediately thereafter it was reduced one half of such amount by a charge to the running account of the petitioners upon the same books. It is not disputed that petitioners then set up this amount on their own books as an expense. This they were entitled to do under the express provisions of Regulations 62 at article 223. Had the relationship between the petitioners and the Smith Co. been that of partners there would be some ground for this contention, but on this question the burden of proof is on the respondent and he has failed to prove and does not argue that any partnership existed. The entire venture was a joint ownership and each owner was entitled to keep books and file Federal tax returns on any system that truly reflected income. On this issue the contention of the respondent is overruled. Under the conclusion we have reached it is not necessary to determine whether such expenditures, if capitalized, are recoverable by depreciation or depletion allowances.

Issue (5), relating to the disallowance of amounts alleged to represent business expenses incurred and paid in the taxable year, has been abandoned by the petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

STERNHAGEN, dissenting: A closing agreement under section 606 may involve a composition of numerous detailed controversies between the taxpayer and the Government as to the items determining tax liability for the year. The liability agreed upon may reflect such

a give and take that no one of these items can be said to have been determined. Neither the original return nor the audit indicates the measure of the liability agreed upon. It is fair to assume that both were adjusted in reaching the final agreement. Without knowing more than that a return had been filed, that the unreduced cost basis of gain shown therein had been at first approved on an audit, and that a settlement had been embodied in a closing agreement under section 606, I could not say that the taxpayer is estopped to claim for the prior year the deduction to which he is otherwise lawfully entitled. *Union Metal Mfg. Co.*, 1 B.T.A. 395.

While the taxpayer should not have both the 1923 deduction and the unreduced cost basis for 1924, and I should deny him the one if he had availed himself of the other, the double advantage ought to be established and not assumed, to support the denial.

TRAMMELL, McMAHON, BLACK, and LEECH agree with the above dissent.

LEECH, dissenting: The majority opinion sustains the respondent's disallowance of petitioners' admittedly correct depreciation deduction for 1923, solely on the ground of an estoppel said to be raised by respondent's establishing a bare agreement, without any of the considerations involved therein, executed under section 606 of the Revenue Act of 1928, closing petitioners' tax liability for 1924.

This Board has held that such an agreement "bars only the reopening of tax liability for the year covered thereby and in no way estops the petitioner from pleading and proving any fact overlooked in such year but related to the tax of a subsequent year. To hold otherwise would permit the perpetuation of an error to affect tax liability for subsequent years, a result quite as likely to be prejudicial to the revenue as beneficial to taxpayers and one which, in our opinion, was not within the intention of Congress when section 606 of the Revenue Act of 1928 was enacted." *W. C. Mitchell Co.*, 27 B.T.A. 645. Cf. *Hering* v. *Tait*, 65 Fed. (2d) 703.

*A fortiori*, such an estoppel cannot be created as to a tax liability for a prior year; certainly not unless a legal basis of fact is established therefor by the respondent, who here asserts it. In my opinion, the present record discloses no such basis. I therefore dissent on this point.

STERNHAGEN, TRAMMELL, McMAHON, and BLACK agree with this dissent.