Peter Robbins v. Commissioner. Peter Robbins and Martha Robbins v. Commissioner.
Robbins v. Commissioner
Docket Nos. 2761-64, 2762-64.
United States Tax Court
T.C. Memo 1967-5; 1967 Tax Ct. Memo LEXIS 256; 26 T.C.M. (CCH) 34; T.C.M. (RIA) 67005; January 11, 1967
Harry Adelberg and David B. Rudow, for the petitioners. George K. Dunham, for the respondent. KERN Memorandum Findings of Fact and Opinion In docket No. 2761-64, respondent has determined a deficiency of $1,768.15 in the income tax liability of petitioner Peter Robbins for the year 1958. In docket No. 2762-64, respondent has determined a deficiency of $793.02, $1,146.45 and $1,057.50 for the years 1957, 1960, and 1961, respectively, in the income tax liability of petitioners Peter Robbins and Martha Robbins, who had filed joint returns for those years. The deficiency in docket No. 2761-64 resulted from respondent's inclusion in the taxable income of Peter Robbins for the taxable year of additional income in the sum of $6,120.00, "representing purported loans made to [him] by Marcie Homes, Inc., which *257 were not repaid and which were not required to be repaid." The deficiencies for the years 1957 and 1960 in docket No. 2762-64 result from similar determinations by respondent with regard to purported loans by Marcie Homes, Inc., while the deficiency for 1961 results from the inclusion in the taxable income of petitioners for that year of additional income in the sum of $1,500, "representing the fair market value of sample house furniture owned by Marcie Homes, Inc., and retained by [them] upon the termination of [their] employment," in addition to the inclusion of additional income similarly made by respondent on account of purported loans made by Marcie Homes, Inc. The cases have been consolidated for hearing and opinion. Findings of Fact The parties have filed herein a stipulation of many of the facts pertinent to these cases, together with a number of exhibits. We incorporate the stipulation in these findings together with the exhibits identified therein. Petitioners are husband and wife who lived during the taxable years, and now live, in Baltimore, Maryland. Their Federal income tax returns for the years were filed by them with the district director at Baltimore, Maryland. *258 Such returns consisted of joint returns for the years 1957, 1960 and 1961, and a separate return of Peter Robbins for the year 1958. Peter Robbins will be sometimes hereinafter referred to as "petitioner." In the early part of 1957 petitioner was working, as he had been during the prior 7 years, in New York in the construction business as an assistant construction superintendent. At that time he was introduced by a real estate man to Max Frohwirth and Marco Shemario who were interested in obtaining the services of a construction superintendent in connection with a real estate development project in the neighborhood of books as "Loans Receivable" were made each week by checks Baltimore, Maryland. Petitioner participated with Frohwirth and Shemario in the formation of Marcie Homes, Inc., hereinafter referred to as "Marcie," which was to be the corporate form of the enterprise. This company was incorporated under the laws of Maryland on January 29, 1957. Petitioner was given 10 percent of the stock of the corporation when it was organized, the stock certificate being issued at petitioner's request in the name of petitioner Martha Robbins. Some 2 years later when the affairs of the corporation *259 appeared prosperous, an additional 15 percent of the stock of Marcie was given to petitioner at the direction of Frohwirth and, again at his request, the stock was issued in Martha's name. Frohwirth and Shemario continued to be at all times the controlling stockholders of the corporation. On or about June 1, 1957, petitioners moved to Baltimore, and petitioner Peter began work pursuant to his employment by Marcie as construction superintendent. Among his responsibilities were the following: (a) securing sub-contractors, (b) hiring and firing of personnel, (c) approving bills, (d) ordering materials, (e) supervising the progress of construction and quality of craftsmanship, and (f) assisting prospective buyers with respect to house plans and changes during the course of construction. In addition, he had the responsibility of obtaining approvals of the initial plans of the subdivisions involved in the project by the appropriate county officials. Petitioner's responsibilities extended to all phases of the enterprise, other than financial and accounting. At the inception of the enterprise Frohwirth and Shemario first suggested that petitioner be paid a salary by Marcie of $150 a week. *260 Petitioner refused this offer since he felt "that $150 a week was not enough for [him]." Thereupon it was agreed that in addition to the regular salary payments of $150 a week, Marcie would pay to petitioner as advances additional amounts not to exceed $120 a week, which advances were to be repaid to Marcie only by crediting the amount of such advances against any profits of Marcie which might become distributable to petitioner in the future. Pursuant to this arrangement Marcie paid to petitioner and petitioner received from Marcie various cash sums paid by check during the years in question in addition to his regular salary. These sums were recorded on the books and records of Marcie and charged to two (2) accounts entitled "Loans Receivable - Peter Robbins" and "Salaries." The amounts charged to the respective accounts and the totals per year were as follows: Loans
Receivable -
Total
Year
Salaries
Peter Robbins
Received
1957
$ 5,100.00
$4,188.00
$ 9,288.00
1958
7,800.00
6,120.00
13,920.00
1959
12,000.00
2,622.45
14,622.45
1960
7,800.00
5,140.00
12,940.00
1961
5,700.00
3,240.00
8,940.00 Customarily the advances to petitioner *261 which were carried on Marcie's books as "Loans Receivable" were made each week by checks in the amount of $120. Marcie's ledger sheet for the account entitled "Loans - Pete Robbins" for the year 1960 (with the exception of "Folio" citations) is as follows: Date
Date
1960
Debits
1960
Credits
Jan. 1
$12,930.45
June 30
$ 120.00
Jan. 31
500.00
July 31
1,000.00
Feb. 28
480.00
Mar. 31
480.00
Apr. 30
600.00
May 31
480.00
June 30
480.00
July 31
600.00
Aug. 31
480.00
Sept. 30
600.00
Oct. 30
480.00
Nov. 30
480.00
Dec. 30
600.00
The books and records of Marcie reflect Martha Robbins received $2,700 during the year 1961 from Marcie which sum was carried on the books of Marcie as salary and was so reported by Martha Robbins on petitioners' joint Federal income tax return for 1961. On January 29, 1962, Marcie was declared a bankrupt by the Federal District Court for the District of Maryland, reference: Bankruptcy No. 11486. Included among the schedules filed by said bankrupt corporation in that proceeding was an item entitled "Loan Receivable" from Peter Robbins to Marcie in the total amount of $21,170.45, as appears on a schedule *262 of assets filed therein and entitled "Choses in Action." Marcie filed its Federal quarterly employment tax returns and withheld and reported Federal and State withholding and social security taxes based upon the amounts indicated on its books and records as salaries. Annually, withholding tax statements were issued by Marcie reflecting such salaries. No employment taxes were deducted from the amounts recorded on the books and records of Marcie as loans. Petitioner terminated his employment with Marcie on November 1, 1961, after he had received some bad checks from the corporation. In the course of an examination before the referee in bankruptcy relating to the assets and liabilities and causes of bankruptcy in the case of Marcie Homes, Inc., at an adjourned first meeting of the creditors in April 1962, petitioner testified that the advances to him by Marcie appearing as "loans" on its books were in the nature of additional salary to him and were not loans repayable by him to Marcie at all events. Under date of June 28, 1962, the attorney for the trustee in bankruptcy of Marcie wrote letters to petitioners demanding payment of the advances to petitioners which had been carried *263 on the books of Marcie as "loans." On the same date similar collection letters were sent by the attorney to all persons appearing as debtors on the books of Marcie. Shortly afterwards the attorney for the trustee in bankruptcy was informed by an attorney representing petitioner that the advances in question were not loans but were in the nature of salary, and was informed by petitioner in a telephone conversation that petitioner was financially unable to make any such payment. At that time the assets of petitioners consisted of a small equity (not in excess of $2,000) in a house, an automobile approximately 6 years old and a bank account not in excess of $100, and there were judgments against them in the total amount of approximately $9,000. In his final report filed with the referee in bankruptcy on April 28, 1966, the trustee in bankruptcy of Marcie stated that the advances made by Marcie to petitioners "were found to be payments for salary due * * * for services rendered * * *" and consequently had been abandoned as alleged assets of the bankrupt. At the time petitioner terminated his employment with Marcie in November 1961, Frohwirth acting for Marcie authorized petitioner *264 to take over possession of a bedroom suite of furniture consisting of a headboard, a bench, a dresser and mirror, and a chair. This furniture had been acquired by Marcie in 1957 and had been used by it in furnishing various model houses during the period 1957 through 1961. It was carried as an asset on the books of Marcie and in its schedule of assets in the bankruptcy proceedings at $1,500. The value of this furniture when acquired by petitioners in 1961 was not in excess of $200. The final report of the trustee in bankruptcy stated that it was found after investigation that this furniture had been given to petitioner by Marcie as payment for services rendered. Notice of respondent's determination of deficiency for the year 1957 was properly mailed to petitioners on March 23, 1964. Notice of respondent's determination of deficiency for the year 1958 was properly mailed to petitioner Peter Robbins on March 23, 1964. Petitioners reported gross income and adjusted gross income of $5,100 in their return for 1957. Respondent determined that they had received additional income in that year of $4,188 by reason of the advances here in question. Petitioner Peter Robbins reported gross *265 income of $7,800 and adjusted gross income of $6,600 in his return for 1958. Respondent determined that he had received additional income in that year of $6,120 by reason of the advances here in question. Opinion KERN, Judge: The principal question herein is whether the advances made by Marcie to petitioners as detailed in our findings constituted loans or constituted, as respondent has determined, income taxable to petitioners in the years when they were received. The facts relating to this question are ambiguous. Respondent in arguing that the advances constituted income rather than loans points to the objective facts that "[there] was no instrument of indebtedness, no interest, [and] no repayment date * * *." Respondent also contends that petitioner's actions and statements at the time of the bankruptcy of Marcie, when the possibility arose of his being required to repay the advances, indicated that petitioner had "* * * no intention to repay or that the amounts in question be repaid." Petitioners in arguing that the advances constituted loans rather than income point to the objective facts that the advances in question were at all times treated on Marcie's books and *266 records as loans charged to an account receivable carried as an asset at the time of its bankruptcy, that only the $150 weekly salary of Peter Robbins was reported as salaries for Federal and State employment tax purposes and was reported in the annual withholding tax statements isused by Marcie, and that two repayments were made by petitioner on this account receivable. [1] Petitioners also contend that the testimony of petitioner at the trial herein supports a conclusion that he intended to repay the advances to Marcie. In our opinion the ambiguity of the facts surrounding this transaction has been largely dissipated by an explanation given by petitioner Peter Robbins in his testimony before us for his apparent equivocation *267 in characterizing the advances as salary in the bankruptcy proceeding and as loans in this litigation. This testimony is as follows: * * * until a couple of months ago salary to me meant the amount of money you got each week regularly, just like a salesman receives maybe $200 a week but he doesn't earn that $200 a week. It is sort of like against something. As far as I was concerned, it was the money I got each week that meant salarly until Mr. Rudow [petitioner's attorney in this proceeding] pointed out differently. This testimony strongly suggests that petitioner - and Marcie - considered the advances to have been made to him as "against" anticipated profits of Marcie which might become distributable to petitioner, which advances were to be repaid but only when and if such profits became distributable and only to the extent of such profits. This interpretation of petitioner's employment contract relating to the advances is consistent with all of the facts established by the record herein. [2]
*268 Accordingly, we have found that the advances made by Marcie to petitioner were to be repaid only if and when profits of Marcie became distributable to petitioner and only to the extent of such profits. Having made this conclusion of fact, it follows as a matter of law that the advances in question constituted taxable income when received. A contingent liability to repay an indeterminate part of advances, dependent on some future event, and which imposes no limitation on the receipient's use of the money advanced does not render the advances loans rather than income. Crossett Timber & Development Co., 29 B.T.A. 705, 710. See also Bouchard v. Commissioner, 229 F. 2d 703, affirming a Memorandum Opinion of this Court; Leland W. Woolard, 47 T.C. 274 (Dec. 8, 1966); Perfumers Manufacturing Corporation, 33 T.C. 532, 539, 540; Holbrook v. United States, 194 F. Supp. 252. Petitioners have conceded that the used bedroom furniture received by them from Marcie in the latter part of 1961 constituted income. Therefore, the sole question to be decided with regard to this issue is what the fair market value of this furniture was *269 at the time it was received by petitioners. Respondent has determined that its value was $1,500. This determination was based on the figure at which it was carried on the books of Marcie. The only testimony on this issue was given by petitioner Peter Robbins who testified that the furniture was a bedroom suite consisting of a headboard, a bench, a dresser and mirror, and a chair; that it had been placed by Marcie in various model houses from 1957 through 1961; that the condition of the furniture was "shopworn" when received by petitioners; and that his estimate of the value of this furniture at that time was "about $150 or so." This testimony was uncontradicted, and petitioner's opinion as to the fair market value of the property [3] is credible in light of the facts shown on record. Because of the inexactness of petitioner's estimate (" $150 or so") and the rule as to burden of proof, we have concluded that the fair market value of the furniture was not in excess of $200 at the time it was received by petitioners. Accordingly, petitioners realized taxable income of $200 by reason of their receipt of this furniture in 1961. *270 Our decision of the first issue herein results in a conclusion that the deficiencies determined for the years 1957 and 1958 are not barred by the statute of limitations. See section 6501(e), I.R.C. 1954. Decisions will be entered under Rule 50. Footnotes
1. There is no oral testimony with regard to these "repayments" other than that a repayment of $1,000 was made by petitioner Peter Robbins in cash. There is no testimony as to why the repayments were made or as to the source of the cash with which the $1,000 repayment was made. Thus there is no inconsistency between the fact that such repayments were made and a hypothesis that the "repayments" were made from monies distributed to petitioner by Marcie as profits.↩
2. It is also consistent with the testimony of the referee in bankruptcy, elicited by petitioners' counsel on cross-examination, to the effect that Frohwirth testified at the bankruptcy hearing "that Mr. Robbins and his wife were allowed to draw $23,000 against their share of expected profits."↩
3. Opinion testimony by the owner of property with regard to its value is admissible. See 3 Wigmore, Evidence, sec. 716, p. 48 (3d ed.). See also, A. & A. Tool & Supply Co. v. Commissioner, 182 F. 2d 300, 303↩, which reversed a Memorandum Opinion of this Court, not with regard to the admissibility of such evidence but with regard to the probative value of such evidence under the peculiar facts of that case.